## HOYT *vs.* HOYT.

1. *Held,* in a suit to set aside or to reform a deed, on the ground of fraud, that the fraud was not proved.

2. Statements of a third party, respecting his rights in property in controversy between complainant and defendant, and denying defendant's rights, not made in his presence, are not competent evidence against him.

3. The parties are confined to the issues made by their pleadings in a court of equity, as much as in a court of law.

4. Where the bill sets up a case of actual fraud, and makes that the ground of the prayer for relief, the complainant is not, in general, entitled to a decree by establishing some one or more of the facts quite independent of fraud, which might, of themselves, create a case under a distinct head of equity from that which would be applicable to the case of fraud originally stated.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. John Linn,* for complainant.

*Mr. W. Brinkerhoff,* for defendant.

THE CHANCELLOR.

The complainant, by her bill, seeks to set aside, or, failing that, to reform, on the ground of fraud, a deed of conveyance in fee, for an undivided half of certain land in Jersey City, executed and delivered by her to the defendant, who is her son, in the spring of 1867. She alleges that she was then the owner of the premises in fee, and that, at the solicitation of the defendant, she consented to convey to him, in consideration of natural affection, an estate in remainder in the property, in fee, to begin at her death; that he caused a deed to be prepared, to be executed by her, and that she executed and delivered it in the belief that it conveyed such estate in remainder, and no more. She further alleges that she is surprised to learn that the deed was an absolute conveyance of the whole estate. The deed is dated February 1st, 1867, and was acknowledged on the 7th of March following, but was not recorded until January 27th, 1868. The defendant, by his answer, denies all fraud in the transaction, and alleges that the conveyance is according to the complainant's intention. He states that in 1860 he and his father, now deceased, were the owners of the land in equal shares, as tenants in common, by virtue of a conveyance of it to them by Barzilla W. Ryder, in 1859, for the consideration of $9000, of which $3000 were paid by them, in equal shares, and the balance, after deducting $2000, the amount of a

mortgage on the premises, subject to which the conveyance was made, and the payment of which was assumed by them, was secured by their bond and mortgage on the property. He further says that in 1860, his father, being about to leave his home in Jersey City, to go to New Orleans on business, and desiring to make provision for the complainant in case of his death, by conveying to her his half of the property, caused a deed of conveyance of his interest in the land to the defendant, to be prepared and executed, and delivered it to the latter, who directed an attorney-at-law of Jersey City to draw a deed of conveyance of that interest to the complainant, in fee, to be executed by him accordingly ; and that a deed was thereupon prepared, and was executed by him in the belief that his instructions had been obeyed, and that it conveyed to his mother only his father's half of the property. He further alleges that he subsequently, but not until many years afterwards, discovered that that deed purported to convey the entire premises, and that he thereupon informed the complainant of the mistake, and requested her to re-convey to him his half of the property, to which she consented, and that he accordingly caused a deed of conveyance (the deed in question in this suit) to be drawn by a neighboring scrivener, which was executed by the complainant with a full understanding of its contents and their effect. The complainant admits that she intended to convey to the defendant an estate in the undivided half of the land, but alleges that by fraud, she was induced to convey a greater estate than she intended. The burden of proof is upon her. Apart from her own testimony, there is none. The testimony as to the statements alleged to have been made by her husband, the defendant's father, asserting his claim to the whole property, and giving his reasons for obtaining the conveyance from the defendant to the complainant, are not competent evidence. None of them were made in the defendant's presence. There can be no doubt that the deed in question was drawn with the complainant's knowledge, and that there was no concealment of its contents from her. She admits that it was read

over to her before she signed it, and there is no reason to believe that it was not read fully and correctly. She also admits that she understood that it conveyed the half of the property to the defendant. It appears, from her own statement, it may be remarked, that she was willing to convey one-half of the property to him, although she had two other children; and it also appears, by her testimony, that she relied on his assurance that she should, notwithstanding the conveyance, have the use of the property for her life. The defendant testifies that she not only understood the effect of the deed, but that after she executed it, she said to him that she was "only giving him his own." He denies that he gave her any assurance whatever as to the use of the property or receipt of the rents by her, before or at the time when the conveyance to him was made. He says he told her, in 1864, at the time of his father's death, that she should, on condition that she would pay the taxes, water rents, &c., and keep the property in repair, have the income of his part of the property until he should desire to have it himself; and he says that he intended this as a contribution to her support, to continue so long as he might see fit. He says that when she appeared to him no longer to need it, he proceeded to collect the income himself. The bill is not filed to enforce an agreement to permit her to take, for her lifetime, the rents and profits of the property conveyed to him. It recognizes no such agreement. It alleges, and the relief sought is based on the allegation, that the deed in question was, by fraud, made to convey the entire estate in the property, instead of an estate in remainder after her death. The parties are confined to the issues made by their pleadings in this court, as much as in a court of law. *Brantingham* v. *Brantingham*, 1 *Beas.* 160. And it is an established doctrine of this court that where the bill sets up a case of actual.fraud, and makes that the ground of the prayer for relief, the complainant is not, in general, entitled to a decree by establishing some one or more of the facts, quite independent of fraud, which might, of themselves, create a case under a distinct head of equity from

that which would be applicable to the case of fraud originally stated. 1 *Dan. Ch. Pr.* 328; *Montesquieu* v. *Sandys,* 18 *Ves.* 302. The defendant testifies that he informed the complainant of the mistake which had been made in his conveyance to her, and thereupon, in view of it, requested her, as an act of justice, to re-convey to him his half of the property. He says: "I first discovered that there had been a mistake in the deed from myself to my mother, in conveying the whole of the property instead of one-half, by reason of Sydney B. Bevans (his brother-in-law, husband of his sister,) or his agent, searching the records and telling Mr. George McLaughlin that the whole of the property stood in my mother's name, and he first told me of it; when I first heard it, I went up to the county clerk's office to investigate for myself; I found it was so, by examining the records; I was not satisfied with my own examination, and got Jacob R. Wortendyke (since dead) to search the records; he reported to me that the whole property stood in my mother's name; I immediately went to my mother and asked her for a deed to correct it, which she gave me, after two or three applications; when I spoke to her the first time about it, she was as much surprised as I was; I told her that Bevans had discovered that it was so, and that I wanted it corrected and righted by giving me a deed for the half that belonged to me, which she did on the second application; she said if I would have one fixed up she would sign it; I explained to her how the mistake had occurred, that the lawyer, in drawing the deed, had drawn it up for the whole instead of the one undivided half; she said 'get a deed up and I will sign it;' on my first application to her for a deed for the undivided one-half part, she objected, because she thought I wanted a deed for the whole of it; before she signed the deed, she consulted Joel I. Hoyt about it; she made no real excuse when I first asked her; I think it was on the second application she found that I did not want a deed for the whole of it; she made no particular objection at the first interview; it was a surprise to the whole of us; at this first interview, we were at my mother's

house, in Wayne street; no one else was present; no one was present at the second interview, besides us; at this interview, she asked me to have the deed drawn; I saw her again in a week or ten days; I saw her almost every night; it was in a week or ten days that I saw her in regard to this matter, again; that was as soon as I could get the deed prepared; I think the deed was then ready." He further says that no representations were made to her by himself or the scrivener, when the deed was signed by her; that before signing the deed, it was read over to her by 'the scrivener; that before he and she went there, he told her how the deed was to be drawn; that it gave him one-half of the whole premises; and he says he made no different representation to her on the subject; that although he withheld the deed from record, it was at her request, she giving as her reason, that if recorded it would make trouble with Bevans, her son-in-law. He adds that after withholding the deed from record for a time, according to her request, he, for his own protection, caused it to be recorded. He further says that nothing at all was said by him or her about the deed taking effect on her death; and he swears that it was given on no conditions, and that the only inducement for giving it was, a disposition to do justice to him by re-conveying to him the property which he, by mistake, had conveyed to her. It appears, from the testimony of Joel I. Hoyt, who was the half-brother and partner in business of the complainant's husband, that before the deed was executed, she told him that on searching the records it had been discovered that the whole of the property had been conveyed to her, and on his expressing his doubts, she assured him that such was the fact, and told him that the defendant requested her to re-convey half of the property to him; and she then asked the witness whether it would be right to do so, to which he replied, that she very well knew that one-half of the property belonged to the defendant, and if a conveyance of that half had been made by him to her, by mistake, it would be 'right to re-convey it. He testifies that she afterwards told him that she had re-conveyed the half to the defendant. The

Hoyt v. Hoyt.

position of the defendant is strengthened by the clear evidence that he was the owner, in his own right, of one-half of the property, and by the evidence that the release from his father to himself, and the conveyance from him to the complainant, were intended merely to change the title of the half owned by his father. Both deeds express a nominal consideration merely. The wife of the defendant did not join in the conveyance from him, and the deed to the complainant was never delivered over to her or her husband, but was left by the defendant at the county clerk's office to be recorded, and by him taken away from there and retained in his possession. Besides, the defendant, after the conveyance to the complainant, continued to deal with the property as if he were still the owner of half of it. He collected the rents and paid interest and principal upon the encumbrances. He caused the buildings to be insured against fire, in the name of both himself and the complainant, as their property, and all the leases were signed by both of them as the owners. That at the time of the conveyance to the complainant, he was the owner, in his own right, of half of the property, is clear. He paid one-half of the first payment, $200, on account of the purchase money, and also of the second payment, $2800, on the same account. The deed was to him and his father, and both assumed the payment of the mortgage of $2000 and interest, subject to which the property was conveyed to them, and both executed the bond and mortgage for $4000 and interest, to secure the payment of the balance of the purchase money. I do not consider it necessary to determine whether the defendant is or is not mistaken as to the person by whom the deeds, by which the conveyance to the complainant was made, were drawn. They were evidently drawn by the same person, and as evidently constituted part of the same transaction. It would not be surprising if the defendant should be mistaken as to the minor details of the transaction after the lapse of fifteen years. In all important particulars he is corroborated. I leave out of consideration, as foreign to the issue, a large amount of testimony which the acrimony, which usually attends and characterizes a family

controversy, has introduced into the case. The fraud alleged in the bill of complaint is not proved. The bill, therefore, will be dismissed, with costs.